**AFFIRM; Opinion Filed July 13, 2021**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

**No. 05-20-00709-CR**

**WENDELL LAMONT PERVIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F94-41885-T**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Carlyle
Opinion by Justice Schenck

Wendell Lamont Pervis, appearing pro se, appeals the trial judge's order denying his motion for post-conviction DNA testing. In two issues, appellant urges the trial court erred by denying his request for appointed counsel and his pro se motion for post-conviction DNA testing. We affirm. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

In March 1994, Michael McManemin had been married to his wife for more than five years. They had two young sons, aged three and four. Around seven o'clock on a Monday evening after both parents had been working long hours,

McManemin drove home where his wife and children were sitting down to dinner. After he parked in the driveway and got out of his car, he was approached by a stranger, shot, and died within minutes.

McManemin's wife heard his car's engine, the gunshot, and a vocal sound coming from him, and ran out to see the murderer running from her driveway to the front of the house. When she screamed, the murderer froze and looked her in the face before running away. She described the murderer as "a young black man with a white baseball cap on."

In May 1994, appellant was charged by indictment with knowingly and intentionally causing the death of the complainant while in the course of committing and attempting to commit the offense of robbery of the complainant. Appellant pleaded not guilty, and his case proceeded to trial before a jury.

The State presented testimony from, among others, McManemin's widow, the police detectives who investigated McManemin's murder, and Eddie Stevenson, appellant's accomplice. One police detective testified the police had received information that appellant and a Romanian man named Eddie Stevenson were involved in some robberies and that they had been involved in McManemin's death. McManemin's widow testified her husband owned a stainless steel Rolex watch that he had had for ten years and that he wore the watch on the day he was killed but was not wearing it after he was shot. Stevenson, who was also charged with McManemin's murder, testified he and appellant were looking to rob someone the

day of McManemin's death. They were focused on stealing a Rolex to sell. According to Stevenson, he and appellant followed McManemin's car home where appellant robbed McManemin at gunpoint outside of Stevenson's view. Stevenson also reported appellant was wearing a white cap that evening and that later that night after Stevenson paid him for the watch, appellant indicated he had killed McManemin during the robbery. When Stevenson was arrested, law enforcement seized a white baseball cap in his possession. Additionally, law enforcement found a different white baseball cap in the car Stevenson drove that night but had later sold to a third party.

The defense presented testimony from appellant, his girlfriend, his brother, and other persons who knew appellant to establish he was with witnesses during the approximate time of the murder and to contradict the testimony of the State's witnesses, particularly Stevenson, that appellant had been involved in the robbery and murder and disposal of the watch and gun. The defense also presented the testimony of a person associated with Stevenson to establish other men fitting appellant's description, particularly young, black men, participated in robberies with Stevenson. The defense also presented testimony that appellant did not own any hats, although a picture of appellant admitted as a defense exhibit showed him wearing one.

The jury found appellant guilty of capital murder, and the trial court sentenced appellant to life imprisonment.

After an unsuccessful appeal and several denied and dismissed habeas applications, on April 30, 2019, appellant filed a motion for post-conviction DNA testing in the trial court. That same day, appellant filed a motion for appointment of counsel to assist him in preparing his motion for post-conviction DNA testing. The trial court denied both motions, and this appeal followed.

## DISCUSSION

Texas Code of Criminal Procedure Chapter 64 defines the procedures for a convicted person to obtain post-conviction DNA testing. TEX. CODE CRIM. PROC. art. 64.01–.05. When reviewing a judge's ruling on a Chapter 64 motion, we give almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017). But we review *de novo* all other application-of-law-to-fact questions. *Id.* at 768–69.

Chapter 64 of the Code of Criminal Procedure requires the judge of the convicting court to order DNA testing when requested by a convicted person if it makes several findings, including "the convicted person has established by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing." *See Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011).[1]

---

[1] As noted by the court of criminal appeals, the trial judge is required to order DNA testing only if it makes all of the following findings:

Article 64.01(c) establishes when a convicted person is entitled to appointed counsel when intending to file a motion for post-conviction DNA testing. CRIM. PROC. art. 64.01(c). The entitlement to appointed counsel is not absolute; it is conditioned on three criteria, including that "reasonable grounds" exist for the filing of a motion. *See Gutierrez v. State*, 307 S.W.3d 318, 321 (Tex. Crim. App. 2010) (remaining criteria are that convicted person inform trial judge that he or she wants to submit motion and that trial judge find that convicted person is indigent). The statute does not define "reasonable grounds," but the court of criminal appeals has held: "Reasonable grounds are present when the facts stated in the request for

---

(1) evidence exists that by its nature permits DNA testing;

(2) the evidence was either:

> (a) justifiably not previously subjected to DNA testing [because DNA testing i) was not available, or ii) was incapable of providing probative results, or iii) did not occur "through no fault of the convicted person, for reasons that are of such a nature that the interests of justice require DNA testing"]; or

> (b) subjected to previous DNA testing by techniques now superseded by more accurate techniques;

(3) that evidence is in a condition making DNA testing possible;

(4) the chain of custody of the evidence is sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(5) identity was or is an issue in the underlying criminal case;

(6) the convicted person has established by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(7) the convicted person has established by a preponderance of the evidence that the request for DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

*See Ex Parte Gutierrez*, 337 S.W.3d at 889.

–5–

counsel or otherwise known to the convicting court reasonably suggest that a 'valid' or 'viable' argument for testing can be made." *See Ex Parte Gutierrez*, 337 S.W.3d at 891. Or, in other words, before appointing an attorney, the trial judge must have "reasonable grounds" to believe that (1) a favorable forensic test is a viable, fair and rational possibility, and (2) such a test could plausibly show that the inmate would not have been convicted. *See id.* at 892. Alternatively, the trial judge could simply assume the result of any proposed DNA testing is "exculpatory" and, if that finding would not change the probability the defendant would still have been convicted, then there are no reasonable grounds to appoint an attorney and no justification for ordering any testing. *See id.*

In his first issue, appellant argues the trial court erred by denying his request for appointment of counsel, arguing appointment of counsel was mandatory because he is indigent and expressed a desire to file a motion for forensic DNA testing. The State responds appellant failed to disclose what the grounds for his DNA testing would be and that no reasonable grounds exist in this case. In his second issue, appellant argues the trial court abused its discretion by denying his motion for post-conviction DNA testing. The State responds appellant failed to show that exculpatory DNA results from testing either of two white baseball caps seized in this case would change the probability that appellant would have been convicted.

Here, appellant proposed testing a white baseball cap that "was seized in relationship to eyewitness testimony that [appellant] was wearing such a cap [when

he shot the complainant] and because Stevenson was allegedly part of the criminal episode in question here and that cap was in his possession." In his motion, appellant reasoned that DNA testing would exclude him as having been the person wearing the hat. No white baseball cap was admitted as an exhibit at the underlying trial at which appellant was convicted. Moreover, there was testimony that two white caps were seized, one in the possession of Stevenson and the other seized when law enforcement located the car Stevenson used in the offense and had sold to a third party.

Aside from any testimony related to white baseball caps, the jury heard the testimony of the complainant's widow who heard her husband shot in the driveway outside their home and saw a man who matched appellant's description running away from her husband's body. The jury also heard Stevenson testify he and appellant targeted McManemin to steal his watch and that they followed McManemin's car home where appellant got out of the convertible with Stevenson's gun and ran to the alley behind the houses. Stevenson parked his convertible and soon heard a gunshot and a woman scream before he began to drive off. Appellant dove into the back of Stevenson's convertible and told Stevenson he had shot McManemin in the leg after a scuffle over appellant's gun. Stevenson also reported that later that night after he paid appellant for the watch, appellant came to Stevenson's house to demand more money, saying, "Man, I killed somebody for you, and you won't give me no money?" The jury heard testimony corroborating

Stevenson's version of events, including that Stevenson told a witness that appellant had used Stevenson's gun in a robbery and had shot the victim. According to that witness, he and Stevenson also threw a Rolex matching the description of McManemin's into a lake and Stevenson indicated someone had died for the watch. That witness then took back the gun and later sold it to a gun dealer and later recovered the watch from the lake and sold it. The police recovered that gun and confirmed through forensic testing that it was the same gun that had fired a shell casing recovered at McManemin's driveway.

The State also presented testimony from witnesses who also had been robbed of their Rolex watches. Their testimony matched that of Stevenson who related appellant had also participated in those robberies. The State presented witnesses who had been in jail with appellant that related appellant confessed to shooting a man in the course of robbing that man of his watch and that appellant had indicated he had killed a man. The State also presented evidence to confirm Stevenson's account of a Rolex robbery similar to the offense that appellant took part in, i.e. testimony from the victim as to the details of the robbery and forensic evidence matching appellant's handprint to one recovered from the victim's car.

Based on the foregoing evidence presented to the jury at appellant's trial, it is clear that even should DNA testing reveal that another person's DNA other than appellant's was on either white baseball cap seized by the State, or that his DNA was absent from either or both caps, such a result would not change the probability of

appellant's conviction.  *See Ex Parte Gutierrez*, 337 S.W.3d at 891–92.

Accordingly, we cannot conclude the trial court erred in denying his motion for appointed counsel or his motion for post-conviction DNA testing.

We overrule appellant's issues.

## CONCLUSION

We affirm the trial judge's order denying appellant's motion for post-conviction DNA testing.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47
200709F.U05

–9–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WENDELL LAMONT PERVIS,
Appellant

No. 05-20-00709-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F94-41885-T.
Opinion delivered by Justice
Schenck. Justices Reichek and
Carlyle participating.

Based on the Court's opinion of this date, the order denying appellant's motion for post-conviction DNA testing is **AFFIRMED**.

Judgment entered this 13th day of July, 2021.